**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **J&H Web Technologies, LLC,** | |
| **Plaintiff,** | **Case No. 2:23-cv-279-JRG** |
| **v.** | **JURY TRIAL DEMANDED** |
| **Square Cat Software Limited and Square Cat Limited,** | |
| **Defendant.** | |

**PLAINTIFF'S MOTION FOR ENTRY**
**OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

Plaintiff J&H Web Technologies, LLC ("J&H" or "Plaintiff") respectfully submit this motion for entry of default judgment and permanent injunction against Defendants Square Cat Software Limited and Square Cat Limited (collectively, "Square Cat" or "Defendant").

<u>**INTRODUCTION**</u>

Despite having actual notice of this lawsuit, Square Cat has chosen to ignore the proceedings before this Court. Rather, it continues to make, sell, advertise, offer for sale, use, and otherwise provide email software and systems that utilize the '342 Patent's patented detecting and unsubscribing methods throughout the United States, through its offering of LeaveMeAlone via its website https://leavemealone.com/, in an attempt to evade compensating and licensing its use, as Microsoft and Google have, and the types of injunctions this Court has the power to order. In light of Square Cat's defiance, the only way to stop its ongoing infringing activities is through the permanent, injunctive relief J&H requests in this motion.

Because of Square Cat willfully ignoring this litigation, J&H respectfully submits that these forms of relief are the only practical solution to stop Square Cat's ongoing infringing activities and

1

its brazen disregard for the patent laws of the United States. For this reason and all the reasons that follow, J&H therefore requests that the Court grant this motion for default judgment and permanent injunction.

<u>**STATEMENT OF FACTS**</u>

**I.    J&H'S PATENTS.**

Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 8,935,342 ("the '342 Patent") relating to methods and systems for detecting and unsubscribing an email address from a series of subscriptions. The '342 Patent was originally issued and exclusively vested to the named inventor, Henal Patel, as of the issue date of the '342 Patent.

The '342 Patent includes numerous claims defining distinct inventions. As discussed below, the inventions generally relate to methods and systems for detecting and unsubscribing an email address from a series of subscriptions, particularly by examining the header contents, the sender's address, the subject, the body and comparing each message to other messages to identify patterns.

At the time of the priority date of the '342 Patent around March 9, 2012, unsubscribing from such email subscription lists can be time consuming and complicated. Because mailers have different methods of allowing a user to unsubscribe, users are confused about the methods and have a difficult time opting out or "cleaning" out such email. For example, some mailers include a list-unsubscribe header which requires the user to respond to the mailer with certain keywords in the subject or body. Second, some mailers require the user click and "opt out", "unsubscribe", or "email preference" link at the bottom of an email. A third method requires a user to respond via a reply-to method. Therefore, the ability to manage email subscriptions lists in bulk may seem unmanageable.

At the time of the inventions, prior art, such as SPAM filters, assist users in automatically

classifying information as it arrives, a user's prior interaction with a certain goods or service provider may render such filtering undesirable and inaccurate. For example, marking a subscription list email as spam may cause product or service purchase receipts to be labeled as spam as well, thereby causing the user to miss important information which was filtered inadvertently. Further, mailing list may have been desirable at one previous point in time, but are now undesirable to the user.

The '342 Patent conceived new methods and systems for detecting and unsubscribing one or more email addresses from a series of email subscriptions. This is achieved by examining the emails in the mailbox of the address and determining if they are from a subscription/automated mailing/list server, which is achieved by examining the header contents, the sender's address, the subject, the body and comparing each message to other messages to identify patterns. Then, the methods and systems examine each message to identify methods of unsubscribing from the subscription. Finally, the methods and systems unsubscribe from the subscriptions either automatically, or in a semi-manual method and optionally deleting all messages associated with the subscription.

The '342 Patent is a pioneering patent, and has been cited as relevant prior art in 151 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as OneTrust, Bank of America and Allstate. Leaders in the industry, such as Microsoft and Google, have taken a license to the '342 Patent, as should Square Cat.

## II. SQUARE CAT'S INFRINGING ACTIVITIES AND ITS REFUSAL TO PARTICIPATE IN THIS LITIGATION.

Square Cat Square Cat makes, sells, advertises, offers for sale, uses, or otherwise provides email software and systems that utilize the '342 Patent's patented detecting and unsubscribing methods.

On information and belief, Square Cat has manufactured and sold products that infringe

the '342 Patent and which include at least, but not limited to LeaveMeAlone.

As shown in more detail below, LeaveMeAlone includes each and every limitation of at least, but not limited to, claims 1 of the '342 Patent and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

Aspects of the infringing LeaveMeAlone product found are shown below, and a full infringing analysis is provided in Exhibit A, attached hereto. The LeaveMeAlone product shown in screenshots below includes the required identifying list-unsubscribe headers in a message header; or identifying unsubscribe methods within the message body; and wherein identifying unsubscribe methods within the message body further comprises the collection of unsubscribe hyperlinks from the message body, and identifying those hyperlinks as potential unsubscription methods, all of the same fundamental components claimed in the '342 Patent.

For example, the elements of identifying list-unsubscribe headers in a message header; or identifying unsubscribe methods within the message body are shown in the following images from LeaveMeAlone.







## III. SQUARE CAT'S REFUSAL TO PARTICIPATE IN THIS LAWSUIT.

On June 16, 2023, J&H Web Technologies filed an Original Complaint for Patent Infringement ("Complaint") against Square Cat Software Limited (Dkt. No. 1). A First Amended

Complaint was filed on June 21, 2023 against Square Cat Software Limited (Dkt. No. 3).

The Clerk issued a summons as to Square Cat Software Limited on July 6, 2023 (Dkt. No. 4). On July 7, 2023, the summons was served on the Texas Secretary of State and proof of service was filed with the Court on July 7, 2023 (Dkt. No. 5). *See* Exhibit B, Declaration of Colin R. Jensen in support of J&H Web Technologies, LLC's Motion for a Clerk's Entry of Default.

After communicating with Defendant, Plaintiff filed a Second Amended Complaint against Square Cat Software Limited and Square Cat Limited on November 8, 2023 (Dkt. 6). This Complaint was served via the Texas Secretary of State on November 13, 2023 (Dkt. 8).

Pursuant to Federal Rules of Civil Procedure 4(d) and 12, and the Court's docket notice in Dkt. No. 5, Square Cat was required to answer or otherwise respond by July 28, 2023.

To date, Square Cat has not filed an Answer to J&H's Complaint, and no attorney has made an appearance on behalf of Square Cat. No attorney has otherwise contacted J&H or its attorneys to discuss an extension to respond to the Complaint.

## **ARGUMENT**

## I. **J&H IS ENTITLED TO A DEFAULT JUDGMENT AGAINST SQUARE CAT.**

### A. **All relevant factors support a default judgment.**

Upon entry of default by the clerk, the Court has the discretion to enter a default judgment against a defendant. *Lindsey, et al. v. Prive Corp.*, et al., 161 F.3d 886, 893 (5th Cir. 1998). Relevant factors for consideration by the Court include whether material issues of fact are at issue; whether the grounds for default are clearly established; whether default was caused by good faith mistake or excusable neglect; whether there has been substantial prejudice; and the harshness of default judgment. *Id.* Here, consideration of all relevant *Lindsey* factors warrants the entry of a default judgment against Square Cat.

First, there are no material issues of fact that prevent the entry of default judgments. "Once

a defendant is in default, the court accepts as true all facts set forth in the complaint aside from those relating to damages." *Eisenhour v. Stafford*, 2013 WL 6212725, No. 9:12-CV-62, at *2 (E.D. Tex. Nov. 26, 2013) (citing *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)). *See also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). Thus, by failing to answer the First Amended Complaint, Square Cat admits the well-pleaded allegations contained therein. *Jones v. Lockhart, Morris & Montgomery*, No. 1:11-CV-373, 2012 WL 1580759, at *3 (E.D. Tex. Feb. 3, 2012) (citing *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). *See also United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) ("Due to Defendant's non-responsiveness, no material issues of fact have been placed in dispute.").

This includes, for purposes of the present lawsuit, the admission that Square Cat's offer to sell and sale of the unsubscribe systems at issue infringe the '342 Patent. *See, e.g., Jaguar Imports, LLC v. Phoenix Global Ventures, Inc.*, No. 6:12-cv-1486-Orl-31KRS, 2013 WL 3491160, at *3 (M.D. Fla. July 2, 2013) ("By its default, [defendant] admits that it willfully infringed [the patent-in-suit]"); *Extreme Tool & Eng'g, Inc. v. Bear Cub Enters., LLC*, No. 08–257, 2009 WL 2948467, at *1 (W.D. Mich. Sept. 3, 2009) (finding infringement established based on defendant's default); *Sklo Podebrady v. Euro Expo 3000, Inc.*, No. 06-3829 ADM/JSM, 2007 WL 4191715, at *2 (D. Minn. Nov. 21, 2007) ("by defaulting, [defendant] admits that it has willfully infringed the [patents-in-suit]"); *Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 531 F.Supp.2d 652, 657 (M.D. Pa.2007) (issuing permanent injunction on plaintiff's motion for default judgment since, on such motions, allegations of the complaint, except those relating to the amount of damages, must be taken as true). The same is true with respect to Square Cat's admission that the '342 Patent is valid and enforceable, (Docket No. 6, at ¶¶ 10, 17).

Second, J&H properly served Square with copies of the Summons and Second Amended Complaint. (Docket No. 8). As such, the grounds for default are clearly established. *See Jones*, 2012 WL 1580759 at *3 (evidence of successful perfection of service on defaulting defendant clearly establishes grounds for default). The record is devoid of any good faith mistake or excusable neglect on the part of Square Cat. To the contrary, the record actually points directly to the opposite conclusion—that is, Square Cat has been provided with the Summons and Second Amended Complaint in multiple ways, and it is willfully choosing to not participate in the litigation. The willful failure to answer a complaint is a sufficient reason for granting a motion for default judgment. *CJC Holdings v. Wright & Lato*, 979 F.2d 60, 64 (5th Cir. 1992).

Third, any claim about the "harshness" of a default judgment under the circumstances is without merit. Square Cat has had ample time to obtain counsel and answer or otherwise respond to J&H's Complaint, but has chosen not to do so – instead, continuing its infringing conduct with impunity. *See Barnett v. A S & I, LLC*, No. 3:13-cv-2464-BN, 2014 WL 6884010, at *4 (N.D. Tex. Dec. 8, 2014) (no weight given to any harshness of default judgment when defendant had adequate time to respond and failed to do so); *Fincanon*, 2009 WL 301988 at *2 (same). The same is true of any substantial prejudice that might result toward Square Cat. *See Leger v. Rivers Edge Treestands, Inc.*, No. 1:13-CV-326, 2016 WL 909173, at *3 (E.D. Tex. Feb. 8, 2016 (defendant's dilatoriness and noncompliance weighs against any finding of substantial prejudice). To the contrary, it is J&H that will be prejudiced if its motion for default judgment and permanent injunction is denied. Square Cat's failure to answer or otherwise communicate with the Court "threatens to bring the adversary process to a halt, effectively prejudicing [J&H's] interests in pursuing its rights afforded by law." *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). *See also Leger*, 2016 WL 909173 at *3 (substantial prejudice to plaintiff outweighed any prejudice to

defaulting defendant); *Barnett*, 2014 WL 6884010 at * 4 (same).

All of the relevant *Lindsey* factors favor the entry of a default judgment against Square Cat and in favor of J&H.

**B.     The Court has jurisdiction over Square Cat to enter a default judgment.**

In order for the Court to enter a default judgment, J&H must make a *prima facie* showing of jurisdiction. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001). That burden in easily met here. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over J&H's patent infringement claim (Count I). Further, the Court has personal jurisdiction over Square Cat because it has actively engaged in the offer for sale, sales, and/or distribution of the accused products in Texas, including in this judicial district. (Docket No. 6 at ¶¶ 4-6, 19, 20, 25, 27, 28). *See Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718, at *8 (E.D. Tex. Dec. 5, 2005) (court had personal jurisdiction over Chinese defendant in patent infringement case where defendant knew or should have reasonably expected its products would be bought by consumers in the United States and Texas).

**C.     There is a sufficient basis in J&H's well-pleaded Complaint for the entry of a default judgment.**

In order to obtain a default judgment, there must also be sufficient basis in the pleadings for the relief requested. *See Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). That requirement is plainly met here.

**1.     Patent infringement claims (Count I).**

The Second Amended Complaint alleges patent infringement on the part of Square Cat as follows:

- J&H is the owner of the '342 Patent, which was duly and legally issued by the USPTO (Docket No. 6 at ¶¶ 8, 9);

10

- J&H has designed and provides systems and services that practice the '342 Patent, including Unlistr as provided at https://www.unlistr.com/, and shown below, of which Square Cat had actual notice (*Id.* at ¶ 29);



- Square Cat is seller seller of email software and systems that utilize the '342 Patent's patented detecting and unsubscribing methods, including the LeaveMeAlone system and service, located at https://leavemealone.com/ (*Id.* at ¶¶ 18, 19);

- Square Cat has infringed and continues to infringe claims of the '342 Patent by, among other things, offering to sell and selling email detecting and unsubscribing systems, including the LeaveMeAlone system and service, located at https://leavemealone.com/ (*Id.* at ¶¶ 18, 19, 25, 26);

- J&H has suffered irreparable harm as a result of Square Cat's actions (*Id.* at ¶ 30); and

- A request for injunctive relief and damages. (*Id.* at p. 10).

The Second Amended Complaint alleges the specific infringing products offered for sale and sold by Square Cat and the specific claims of the '342 Patent that have been and are being infringed. These specific allegations provide a sufficient basis for a default judgment on J&H's claims of patent infringement (Count I) under Federal Rule of Civil Procedure 8(a)(2). *See* Fed. R. Civ. P. 8(a)(2).

Further, J&H has also gone beyond the infringement allegations in the pleadings. Exhibit A demonstrates that Square Cat's email detecting and unsubscribing systems, including the LeaveMeAlone system and service, located at https://leavemealone.com/ literally infringe at least claim 1 of the '342 Patent. (Exhibit A).

J&H is entitled to the entry of a default judgment against Square Cat on its claims of patent infringement.

## II.    J&H IS ENTITLED TO A PERMANENT INJUNCTION.

As a remedy for Square Cat's ongoing infringement, J&H requests the entry of a permanent injunction against Square Cat. District courts are authorized to grant an injunction to restrain ongoing patent infringement "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The district courts also have power to grant an injunction to prevent the violation of any right of the owner of a registered mark, or to prevent a violation of 15 U.S.C. § 1125(a), (c), or (d). 15 U.S.C. § 1116(a).

A party seeking a permanent injunction must show that the following four factors (generally referred to as the eBay factors) are satisfied: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, each of these factors weighs in favor of granting permanent injunctions against Square Cat.

**A.  J&H has suffered and will continue to suffer irreparable harm in the absence of a permanent injunction and any remedies available at law are inadequate to compensate J&H for its injuries.[1]**

If Square Cat is allowed to continue its violations of J&H's patent rights, J&H will suffer irreparable harm. Further, such harm will occur in the form of continued loss of market share, changed consumer expectations created by the presence of inexpensive, infringing copycat products, and the loss of the its exclusive rights that the patent laws are intended to protect. Harm will also occur via the immeasurable damage to J&H's goodwill and reputation for providing premium products. And perhaps most importantly, as demonstrated by Square Cat's ongoing conduct, injunctive relief is the only way to stop Square Cat's ongoing infringing activities.

**1.  J&H has suffered and will continue to suffer irreparable harm.**

With respect to J&H's patent rights, every time a consumer purchases an accused product from Square Cat, a potential sale by J&H is lost. Loss of market share justifies a finding of irreparable harm. *See Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2014 WL 8708239, at * 9 (E.D. Tex. March 31, 2014) (citing *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).[2] Without an injunction, Square Cat's continued infringement will contribute to J&H's ongoing loss of sales and market share will extend into the future.

In addition to—and contributing to—the loss to J&H's market share, Square Cat's

---

[1] The first two *eBay* factors—irreparable harm and lack of an adequate remedy at law—are "closely related" and are discussed together. *ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012).

[2] In order to show irreparable harm in the form of lost sales/market share, a patent holder must demonstrate a "causal nexus" between the lost sales/market share and the patented feature(s) at issue. *Samsung Electronics*, 695 F.3d at 1374. Such a "causal nexus" exists in the present case, as Square Cat's infringing systems that are virtually identical to J&H's unsubscribe system.

infringement is contributing to the creation of a marketplace where consumers expect a lower price point on unsubscribe services. Square Cat's infringing services are routinely offered for sale for less than J&H's service. If Square Cat's infringement is permitted to continue, J&H would be forced to decide between a continued loss to its market share or a reduction in the retail price for its own products in order to compete against the infringing unsubscribe systems being sold by Square Cat. *See Celsis*, 664 F.3d at 930 (price erosion valid ground for finding irreparable harm). This is particularly the case, as Square Cat is a direct competitor of J&H. *See Trebro Mfg. Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) (evidence of direct competition "strongly shows a probability of irreparable harm"); *i4i Ltd. Partnership v. Microsoft Corp.*, 670 F.Supp.2d 568, 599 (E.D. Tex. 2009) (where "there is direct competition in the marketplace", this fact "weighs heavily in favor of irreparable injury."). "Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996). In a situation like the present, "the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

Furthermore, the irreparable harm to J&H will be compounded to the extent that Square Cat's infringing services cause customer dissatisfaction. J&H ensures that its services are of high quality by devoting substantial resources to quality control testing. J&H has no control over the quality of Square Cat's infringing services. "Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok International Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1554 (Fed. Cir. 1994). *See also Groupe*

*SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 205 (3d Cir. 2014) (harm to brand reputation and goodwill is "impossible" to quantify); *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009) (damage to a company's good name and ability to conduct business supports a finding of irreparable harm).

### 2. Remedies at law are inadequate and J&H's requested injunctive relief is the only way to stop Square Cat's ongoing infringing activities.

As set forth herein, Square Cat has chosen to simply ignore this litigation and continue with its infringing conduct unabated. It is unlikely that J&H could collect a damages award because Square Cat is a foreign defendant with no known domestic assets. *See Bianco v. Global Medical, Inc.*, No. 2:12–CV–00147–WCB, 2014 WL 1049067, at *13 n.4 (E.D. Tex. Mar. 17, 2014) (*citing Acticon Technologies v. Heisei Electronics Co.*, No. 06–CV–4316 (KMK), 2008 WL 356872 (S.D.N.Y. Feb. 5, 2008) (noting that because a defendant defaulted, damages were difficult to ascertain and there was serious doubt as to whether the plaintiff could collect a damages award). Injunctive relief is, thus, the only way to stop Square Cat's ongoing infringing activities. Without such relief, J&H is left with nothing as Square Cat refuses to license and avoid detection and consequences. Accordingly, as set forth in Paragraph (1) of the Proposed Order, J&H respectfully requests this Court enjoin Square Cat, and any persons in active concert or participation therewith, from the sale, offer for sale, and providing the LeaveMeAlone system and service, located at https://leavemealone.com/ in the United States.

Finally, J&H requests that this Court order that Square Cat, and any persons in active concert of participation therewith, turn over the LeaveMeAlone system and service, located at https://leavemealone.com/, to J&H for disablement, or in the alternative, retain possession and custody of the LeaveMeAlone system and service, and https://leavemealone.com/. Given Square Cat's past conduct and change of business hands, J&H submits that such relief is both appropriate and necessary to prevent Square Cat's continued infringement. *See, e.g., Bird-B-Gone Inc. v.*

*Haierc Indus. Co.*, No. 2:18-cv-00819, 2018 WL 5816630, *3-4 (D. Nev. Nov. 6, 2018) (entering permanent injunction restraining defendant and persons acting in concert from, *inter alia*, selling, distributing, assisting other entities with the sale or distribution, or processing orders of the infringing products); *Mannatech, Inc. v. Glycoproducts Intern., Inc.*, No. 3-06-cv-0471, 2008 WL 2704425, at *4-5 (N.D. Tex. July 9, 2008) (enjoining defendant and those in concert from selling or "otherwise distributing within the United States" the products in question, and, *inter alia*, ordering defendant and those in concert to deliver to counsel for plaintiff any products in the party's possession, custody, or control); *Adalis Corp. v. Forbo Adhesives, LLC*, No. 1:06CV00270, 2007 WL 673764 (M.D.N.C. Feb. 27, 2007) (enjoining defendant and those in concert from selling the accused product, and defining "selling" to include "shipping or delivering"). Accordingly, J&H respectfully requests that this Court enter an Order as set forth in the Proposed Order.

**B.     The balance of the equities weighs heavily in favor of an injunction.**

The "balance of the equities" assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). This factor overwhelmingly favors J&H.

As discussed above, J&H will suffer significant and irreparable harm absent an injunction. Furthermore, if Square Cat is allowed to continue to engage in its infringing activity and cannot be halted by an injunction, it will encourage other actors to begin or to continue to engage in the sale of infringing unsubscribe, thereby inflicting further harm upon J&H. Permitting Square Cat—a defaulting defendant—to continue its infringing sales would be particularly unfortunate as it would better position it, a defaulting party who has ignored legal process, in comparison with the other defendants that have entered into licenses, including Google and Microsoft.

On the other hand, Square Cat has blatantly copied J&H's patented inventions, and is selling services in violation of J&H's patent rights. Any harm to Square Cat in the form of costs or

expenses incurred in creating the infringing systems, or in lost opportunity to sell the infringing servcies in the United States by violating J&H's patent rights, is irrelevant. *See i4i Ltd.*, 598 F.3d at 863 (holding that the infringing party's expenses in creating the infringing products, consequences such as redesign costs, or loss of the opportunity for further commercial success should be ignored); *Flowserve Corp. v. Hallmark Pump Co., Inc.*, Civil Action No. 4:09-cv-0675, 2011 WL 1527951, at *10 (S.D. Tex. Apr. 20. 2011) (no cognizable "hardship" imposed on a defendant where the only hardship imposed it an obligation to comply with the Lanham Act) (citation omitted). *See also Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected"). The balance of the equities strongly favors an injunction.

**C.     Enjoining Square Cat's continued infringement promotes the public interest.**

The public interest "is best served by enforcing patents that are likely valid and infringed." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1338 (Fed. Cir. 2012); *see also TiVo Inc. v. EchoStar Communs. Corp.*, 446 F. Supp. 2d 664,670 (E.D. Tex. 2006) (the public interest is served by enjoining infringement because "[t]he public has an interest in maintaining a strong patent system."); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 2014–1802, 2015 WL 9014387, at *10 (Fed. Cir. Dec. 16, 2015) ("the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions.").

Denial of an injunction in circumstances like the present—literal infringement by a copycat seller that knows it is infringing—would encourage other copycat infringers to enter the market and misappropriate J&H's intellectual property. An injunction here will serve the important function of encouraging third parties to respect patent rights and to compete based on their own

innovations, rather than copying someone else's inventions. No countervailing public interest weighs against the issuance of an injunction in this case.

## III. THE COURT SHOULD ENTER AN AWARD OF DAMAGES AGAINST SQUARE CAT FOR ITS INFRINGING ACTIVITIES.

Upon a showing of patent infringement, a patentee is entitled to an award of damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "There are two alternative categories of damages typically recovered in a patent case: the patentee's lost profits or the 'reasonable royalty the patentee would have received through arms-length bargaining.'" *Papst Licensing GmbH & Co., KG v. Samsung Electronics Co., Ltd.*, 403 F. Supp. 3d 571, 604 (E.D. Tex. 2019) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).[15]

Here, J&H submits that this Court should award J&H damages in the amount of $16.00 (https://leavemealone.com/) per month, per customer, as lost profits for the infringement of J&H's Patents. Through https://leavemealone.com/, Square Cat has approximately 1000 customers. (https://founderbeats.com/microsaas-unsubscribe-emails-leavemealone). Therefore, through the expiration of the '342 Patent on December 21, 2032, J&H respectfully requests an award of damages in the amount of $19,200.00 ($16.00 multiplied by 12 months, by 4 years, by 400 customers).

Here, J&H has alleged that Square Cat's infringement of the Patents was willful, (Docket No. 6, at ¶ 29), which has been further demonstrated by Square Cat's decision to simply ignore this litigation and continue its infringing conduct. Indeed, the various factors considered by courts in determining the amount of enhanced damages weigh heavily in favor of damages enhancement, given Square Cat's egregious conduct. *See Read Corp. v. Portec Inc.*, 970 F.2d 816, 826-27 (Fed.

Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instr. Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (listing various factors in determining enhanced damages, including deliberate copying, knowledge of patent protection, infringer's behavior in the litigation, closeness of the case, and duration of misconduct).[3]

## IV.    J&H IS ENTITLED TO AN AWARD OF ATTORNEY FEES UNDER 35 U.S.C. § 285 AND 15 U.S.C. § 1117.

Pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." An "'exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-00156-JRG, 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

Here, Square Cat has admitted its infringement of the Patents was willful. (Docket No. 6, at ¶ 29). Attorney fees are routinely awarded when willful infringement has been proven. *See Pact XPP Technologies, AG v. Xilinx, Inc.*, Case No. 2:07-CV- 563-RSP, 2013 WL 4735047, *1 (E.D. Tex. Sept. 3, 2013). Courts have held that in the context of default, "a pleading that infringement was willful is sufficient to establish entitlement to attorneys' fees." *Ceiva Logic Inc. v. Frame Media Inc.*, No. SACV 08-00636-JVS, 2014 WL 7338840, at *4 (C.D. Cal. Dec. 19, 2014) (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *see also Rubbermaid Commercial Products, LLC v. Trust Commercial Products*, No. 2:13-cv-02144-GMN-GWF, 2014 WL 4987878, at *6 (D. Nev. Aug. 22, 2014) (same); *Crescent Services, Inc. v. Michigan Vacuum*

---

[3] J&H recognizes, as set forth in its discussion of the propriety of injunctive relief in this case, that it is unlikely that J&H will collect a damages award from Square Cat, a foreign defendant with no known domestic assets. Regardless, however, an award of damages is appropriate under the circumstances, and will serve to further deter Square Cat's conduct in the United States, and allow J&H the ability to seize Square Cat's domain name in the United States to satisfy such monetary judgment, if appropriate.

*Trucks, Inc.*, 714 F.Supp.2d 425, 430-31 (W.D.N.Y. May 12, 2010) (awarding fees where defaulting patent infringer failed to respond efforts to resolve dispute or appear to defend its actions).

What is more, Square Cat's disregard for both J&H's patent rights (both before and after the filing of the Complaint) and the legal process itself further supports a finding that this is an exceptional case. In addition to its disregard for this litigation, Square Cat has taken affirmative steps to *continue* its infringing conduct by moving ownership to avoid enforcement efforts. J&H respectfully submits that such conduct renders this an "exceptional case" where an award of attorney fees is warranted, and requests leave to submit an application for reasonable attorney fees.

## V.  J&H IS ENTITLED TO ITS COSTS UNDER RULE 54(D)(1).

Under Federal Rule of Civil Procedure 54(d)(1), "costs–other than attorney's fees–should be allowed to the prevailing party." Again, the entry of default judgments and permanent injunctions alter the legal relationship between the parties and are sufficient to make J&H a "prevailing party" for purposes of awarding costs. *See Power-One, Inc. v. Artesyn Technologies, Inc.*, Civil Action No. 2:05cv463, 2008 WL 4065871, *3-*4 (E.D. Tex. Aug. 27, 2008). J&H therefore requests that the clerk tax costs after entry of final judgment and the submission of a bill of costs.

## CONCLUSION

For the foregoing reasons, J&H respectfully requests that the Court grant this motion and enter a default judgment against Square Cat, issue a permanent injunction against Square Cat pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 283 and 35 U.S.C. § 271, award J&H damages in the amount of $19,200.00 pursuant to 35 U.S.C. § 284, award J&H its reasonable attorney fees pursuant to 35 U.S.C. § 285, and award J&H its costs pursuant to Federal Rule of

Civil Procedure 54(d)(1).

Specifically, the Court should enter a permanent injunction in which:

1.    Square Cat and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) are permanently enjoined from infringing, directly or indirectly, claim 1 of U.S. Patent No. 8,935,342, by offering to sell, selling, importing into the United States, distributing, shipping, or otherwise disposing of the Accused Products or unsubscribe systems that are not more than colorably different therefrom.

2.    Square Cat and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) shall turn over the domain name [https://leavemealone.com/](https://leavemealone.com/) to J&H to disable [or in the alternative, retain possession and custody of the LeaveMeAlone system and service, and [https://leavemealone.com/](https://leavemealone.com/)].

Dated: June 19, 2024              Respectfully submitted,

*/s/ Randall Garteiser*
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**
**J&H WEB TECHNOLOGIES, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic, on June 19, 2024.

*/s/ Randall Garteiser*
Randall Garteiser